THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILLIAM E. KUHLMANN, *et al.*,

              Plaintiffs,

    v.

SABAL FINANCIAL GROUP LP, *et al.*,

              Defendants.

CASE NO. C13-1865-JCC

ORDER

This matter comes before the Court on Defendant Bryan Boyle's motion to dismiss (Dkt. No. 16) and Defendants ADC Venture's and Sabal Financial Group's motion for judgment on the pleadings (Dkt. No. 35). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS both motions to the extent they challenge this Court's subject matter jurisdiction to consider Plaintiffs' claims, GRANTS Defendant ADC's motion for judgment on the pleadings with regard to its counterclaim, and otherwise DENIES the motions as moot.

## I.    BACKGROUND

This case involves a failed real estate development partnership between Plaintiffs William Kuhlmann, Judith Caspar, and non-parties Daniel and Cathy Stevens. It also involves the failure of City Bank in Lynnwood, Washington, which provided a $500,000 line of credit to the Stevens to be used for the real estate development. According to Plaintiffs' Complaint, Mr.

1  Kuhlmann and Ms. Caspar, along with the Stevens, formed Plaintiff Kuhlmann Ridge Estates,

2  LLC ("KRE"), to develop property located in Snohomish County, Washington in 2006. (Dkt.

3  No. 1, at ¶ 3.1.)  Mr. Kuhlmann and Ms. Caspar provided the 48-acre tract of land to be

4  developed, which had been in their family for generations, while Mr. Stevens agreed to provide

5  $200,000 in financing and to oversee the construction, development, and the remaining financing

6  of the project in exchange for a 50 percent stake in KRE. (*Id.* at ¶¶ 3.4–3.6.) The Stevens

7  allegedly took out a $250,000 loan to finance the project from City Bank, and later obtained an

8  increase on that line of credit for another $250,000. (*Id.* at ¶¶ 3.7, 3.11, 3.22.) The loan was

9  secured by a Deed of Trust on the Property that Mr. Kuhlmann and Ms. Caspar signed. (*Id.* at ¶¶

10  3.7–3.8.)

11          The Complaint alleges that City Bank and its employees represented to Plaintiffs that the

12  Bank would exercise stringent controls on the lines of credit by requiring documentation of

13  construction progress before advancing funds, but failed to do so, and further failed to require

14  payment from Plaintiffs when Mr. Stevens ultimately defaulted, thereby allowing Mr. Stevens to

15  take advantage of them. (*Id.* at ¶¶ 3.11, 3.16, 3.21, 3.22, 3.25.) With regard to the

16  misrepresentations, the Complaint alleges in a general fashion that prior to agreeing to secure the

17  loan with the Property, Mr. Kuhlmann "spoke with several people at City Bank, including Naomi

18  Max" about "the controls City Bank would exercise over the construction line of credit before it

19  advanced funds," and "made it clear to City Bank that [the Plaintiffs] would only agree to enter

20  into the construction loan transaction if City Bank exercised controls on the line of credit." (*Id.* at

21  ¶ 3.8.) In response, "City Bank [allegedly] assured Mr. Kuhlmann and Ms. Caspar that the terms

22  of the Construction Loan Agreement [("CLA")] [between the Bank and the Stevens] provided

23  the protections that Mr. Kuhlmann and Ms. Caspar required[,]" and that the CLA "required

24  documentation of construction before draws would be permitted." (*Id.* at ¶ 3.9.) Mr. Kuhlmann

25  and Ms. Caspar then signed the Deed of Trust, which they allege incorporated the CLA. (*See id.*

26  at ¶ 3.11; Dkt. No. 15 at 34.) After they agreed to secure the loan with the Property, the

1  Complaint alleges, Mr. Stevens failed to actually develop the land, maxed out the initial line of

2  credit, failed to make monthly interest payments on the loan as required from June 2006 through

3  August 2007, obtained the increase in the line of credit with Plaintiffs' permission by failing to

4  disclose the notices of default, and again maxed out the line of credit in 2008 without completing

5  any substantial work on the development. (*Id.* at ¶¶ 3.17, 3.25.) Plaintiffs fault City Bank and

6  Defendant Bryan Boyle for not exercising the promised controls over the loan dispersements and

7  failing to notify them of the Stevens' numerous defaults.

8       The CLA that Mr. and Mrs. Stevens signed with City Bank, but which Plaintiffs did not

9  sign, contains numerous provisions for which the parties offer differing interpretations. The first,

10 entitled "Conditions Precedent to Each Advance," expressly states: "*Lender's obligation* to make

11 the initial Advance and each subsequent Advance under this agreement shall be *subject to the*

12 *fulfillment to Lender's satisfaction* of all of the conditions set forth in this Agreement and in the

13 related documents[.]" (*Id.* at ¶ 3.10; Dkt. No. 36, Ex. A) (emphasis added). The agreement then

14 calls for City Bank's approval of contractors, subcontractors, plans, specifications, permits,

15 architects' and construction contracts, and a borrower's authorization. (*Id.*) The CLA also

16 contains a "Disbursement of Loan Funds" provision which provides, in relevant part, that

17 "Borrower shall apply only for disbursements with respect to work actually done by the General

18 Contractor and for materials and equipment actually incorporated into the project. Each

19 application for an advance shall be deemed a certification of Borrower that . . . all

20 representations and warranties contained in the agreement are true and correct[.]" (*Id.*) And

21 finally, the CLA contains an express "Limitation of Responsibility" provision, which states:

22       Inspections and approvals of the Plans and Specifications, the Improvements, the
23       workmanship and materials used in the improvements, and the exercise of any
         other right of inspection, approval, or inquiry granted to Lender in this Agreement
24       are acknowledged to be solely for the protection of Lender's interests, and under
         no circumstances shall they be construed to impose any responsibility or liability
25       of any nature whatsoever on Lender to any party. . . . Neither Borrower nor . . .
         any other person shall rely, or have any right to rely, upon Lender's determination
26       of the appropriateness of any Advance.

1    (Dkt. No. 36, Ex. A at 3.)

2        In 2010, City Bank failed. (*Id.* at ¶ 3.39.) The Complaint alleges that the FDIC took

3    control of the bank as receiver on April 16, 2010, in order to wind down its affairs. (*Id.*) The

4    FDIC then set July 21, 2010 as the "claims bar date" by which creditors and claimants were

5    required to file any existing claims against the Bank with the FDIC. (*Id.*) According to Plaintiffs'

6    Complaint, Mr. Kuhlmann and Ms. Caspar did not receive a written notice or see any news about

7    City Bank's failure or the FDIC receivership until late July—approximately one week after the

8    claims bar date passed—when Mr. Kuhlmann spoke with Mr. Stevens. (*Id.* at ¶¶ 3.27, 3.39.)

9    Plaintiffs then allegedly received a Notice of Default from the FDIC on March 7, 2011. (*Id.* at ¶

10   3.41.) The Complaint alleges that after Plaintiffs' counsel contacted the FDIC about the default,

11   no further action was taken until April 30, 2013, when Plaintiffs filed claims "based on the facts"

12   in their Complaint with the FDIC. (*Id.* at ¶ 3.42.) In letters dated June 3, 2013, the FDIC

13   disallowed Plaintiffs' claims as untimely. (*Id.*) Plaintiffs then filed a state-court lawsuit, but

14   voluntarily dismissed that action. (Dkt. No. 32 at 7 n.1.)

15       On October 15, 2013, Plaintiffs filed the instant lawsuit against Mr. Boyle, City Bank's

16   former Vice President; ADC Venture 2011-2, LLC, which purchased the rights to the Loan

17   Documents from the FDIC as receiver for City Bank in 2012; and Sabal Financial Group, LLC,

18   which is the servicer of the loans. (*Id.* at ¶¶ 1.4–1.6, 3.43–3.44.) Plaintiffs do not name as

19   defendants City Bank, the FDIC, or the Stevens. Instead, Plaintiffs bring the following claims

20   based exclusively on the alleged misrepresentations, omissions, or conduct of City Bank before it

21   failed and was placed into receivership: (1) Fraud in Factum; (2) Fraud in the Inducement; (3)

22   Common Law Fraud; (4) Breach of Contract; (5) Estoppel; (6) Breach of Special Duty; (7)

23   violation of the Washington Consumer Protection Act; and (8) Declaratory Judgment. (*Id.* at ¶¶

24   4–11.) Defendant Bryan Boyle now moves to dismiss pursuant to Federal Rule of Civil

25   Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 16.) Defendants ADC and Sabal counterclaim for

26   breach of contract and "foreclosure of deed of trust," (Dkt. No. 15), and now move for judgment

1   on the pleadings (i) that ADC is entitled to foreclose on the property and (ii) for dismissal of

2   Plaintiffs' claims against ADC and Sabal. (Dkt. No. 35.) For the reasons that follow, the Court

3   dismisses Plaintiffs' Complaint in its entirety for lack of subject matter jurisdiction and grants

4   Defendant ADC's motion for judgment on the pleadings with respect to its counterclaim.

5   **II.    DISCUSSION**

6        **A.     Plaintiffs' Claims Under FIRREA**

7             **1.      Legal Standard**

8        Under Federal Rule of Civil Procedure 12(b)(1), the Court must dismiss claims over

9   which it lacks subject matter jurisdiction.[1] *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939,

10  954 (9th Cir. 2011). The party asserting jurisdiction bears the burden of proving that the Court

11  has subject matter jurisdiction over the asserted claims, *Kokkonen v. Guardian Life Ins. Co. of*

12  *America*, 511 U.S. 375, 377 (1994); though, even if a defendant does not move for dismissal

13  under Rule 12(b)(1), the Court has a duty to establish subject matter jurisdiction *sua sponte*. *See*

14  *United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir. 2004). When

15  determining the existence of subject matter jurisdiction, "the district court is not confined by the

16  facts contained in the four corners of the complaint—it may consider [other] facts and need not

17  assume the truthfulness of the complaint." *Americopters, LLC v. F.A.A.*, 441 F.3d 726, 732 n.4

18  (9th Cir. 2006).

19       Plaintiffs here base their lawsuit upon the limited jurisdictional grant contained in the

20  Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821.

21  (Dkt. No. 1 at ¶ 2.2.) FIRREA "extends a special kind of federal jurisdiction outside the scope of

22  ─────────────────────

23       [1] Where defendants challenge the Court's subject matter jurisdiction and the sufficiency of a plaintiff's
    claim on the merits, as Defendants here have done, the Court must resolve jurisdictional challenges before

24  addressing any Rule 12 arguments as to the merits. *See Steele Co. v. Citizens for a Better* Env't, 523 U.S. 83, 94
    (1998) (rejecting doctrine of "hypothetical jurisdiction"); *Rivera v. Railroad Retirement Bd.*, 262 F.3d 1005, 1008

25  (9th Cir. 2001) (explaining that "[t]he Supreme Court has instructed lower courts to resolve jurisdictional issues
    before reaching the merits of a case."). Because the Court concludes that subject matter jurisdiction does not exist

26  over Plaintiffs' affirmative claims, the Court declines to consider any arguments on the merits except with regard to
    Defendants' independent counterclaim.

28 U.S.C. § 1331, the normal source of federal question jurisdiction." *Alkasabi v. Washington Mutual Bank, F.A.*, --- F. Supp. 2d ---, 2014 WL1193899, at * 1 (D.D.C. 2014) (citation omitted). Because Plaintiffs do not bring any independent federal claims, because complete diversity is lacking between Plaintiffs and Defendants, and because FIRREA strips courts of jurisdiction where it applies, jurisdiction over Plaintiffs' Complaint depends entirely on whether they complied with the numerous jurisdictional prerequisites established under FIRREA. As explained below, Plaintiffs failed to do so.

### 2.    Applicable Law and Discussion

Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act "in the midst of the savings and loan insolvency crisis to enable the FDIC . . . to expeditiously wind up the affairs of literally hundreds of failed financial institutions throughout the country." *Westberg v. FDIC*, 741 F.3d 1301, 1303 (D.C. Cir. 2014). In order to efficiently resolve the numerous potential claims against a failed bank, avoid protracted litigation that would preclude the wind-ups, and ensure that the bank's assets could be transferred to willing buyers, the statute creates an administrative claims process under which the FDIC has authority to quickly resolve all claims against the assets of a failed bank that is placed in receivership under the FDIC or which arise from the conduct or omissions of the failed bank. *See* 12 U.S.C. § 1821(d)(3)–(13). As explained below, the statute strictly limits federal courts' ability to adjudicate claims that are not first exhausted within the FIRREA's administrative process. That process and its jurisdictional consequences are the subject of this order.

When liquidating a failed bank's assets, the FDIC must "promptly publish a notice to the depository institution's creditors to present their claims [to the FDIC] by a specified date in the notice[,]" otherwise known as a "claims bar date." 12 U.S.C. § 1821(d)(3)(B). FIRREA requires that the FDIC provide at least 90 days to allow claimants to file claims against the failing bank's assets. 12 U.S.C. § 1821(d)(3)(B)(i). The FDIC must also mail a similar notice directly to any creditor shown on the institution's books and any "claimant[s] not appearing on the institution's

books" whose names and addresses the FDIC later discovers. 12 U.S.C. § 1821(d)(5)(A). When

a timely claim is filed, section 1821(d)(5)(A)(i) requires the FDIC to either allow or disallow the

claim within 180 days of the claim being filed. *See* 12 U.S.C. § 1821(d)(5)(A)(i);

*Intercontinental Travel Marketing, Inc. v. FDIC*, 45 F.3d 1278, 1282 (9th Cir. 1994). If a

claimant files his or her claim after the claims bar date, the FDIC is not permitted to consider the

claim under section 1821(d)(5)(A)(i)—instead, FIRREA mandates that "claims filed after the

[claims bar date] shall be disallowed and such disallowance shall be final." 12 U.S.C. §

1821(d)(5)(C)(i). The single exception to this bar on untimely claims provides that a claim filed

after the claims bar date "*may* be considered *by the receiver* if . . . the claimant did not receive

notice of the appointment of the receiver in time to file such claim before such date; and . . . such

claim is filed in time to permit payment of such claim." 12 U.S.C. § 1821(d)(5)(C)(ii) (emphasis

added).

FIRREA also specifies the limited circumstances under which federal courts may

consider claims subject to the aforementioned administrative process. As an initial matter,

FIRREA contains a broad jurisdiction stripping provision, which provides as follows:

> *Except as otherwise provided in this subsection, no court shall have jurisdiction over* [] any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, [ . . . or] any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D)(i)–(ii) (emphasis added). The "except as otherwise provided"

language refers back to section 1821(d)(6), the provision for judicial review of timely claims that

are disallowed or ignored. *Westberg*, 741 F.3d at 1303. Specifically, that provision states that

when the FDIC either disallows a claim or fails to make a decision on a claim within 180 days,

the claimant may then, and only then, file suit on the claims that were presented to the FDIC and

disallowed or ignored. *See* 12 U.S.C. § 1821(d)(6) (authorizing judicial review when claims are

either denied pursuant to section 1821(d)(5)(A)(i) or ignored for the 180 day period established

in the same section). Such a suit must be brought within 60 days of either the FDIC's

1   disallowance of a timely claim or after the 180-day decisional period passes, whichever is earlier,

2   and must be filed in either the United States District Court for the District of Columbia or in the

3   district where the failed institution had its principle place of business. *See* 12 U.S.C. §

4   1821(d)(6)(A).

5        The Ninth Circuit and other courts of appeals have recognized that FIRREA strips federal

6   courts of jurisdiction to adjudicate subject claims made outside the procedure established in

7   section 1821(d). *Intercontinental Travel Marketing, Inc.*, 45 F.3d at 1282–84. Here, the parties

8   agree that Plaintiffs' claims "relate to an[] act or omission" of a failed bank that was placed

9   under FDIC receivership, *see* 12 U.S.C. § 1821(d)(13)(D)(i)–(ii), and thus, that this Court has no

10  jurisdiction to consider Plaintiffs' claims unless they were properly exhausted under FIRREA's

11  plain terms.[2] For the following reasons, they were not properly exhausted and the Court lacks

12  subject matter jurisdiction. First, Plaintiffs undisputedly failed to file the instant federal lawsuit

13  within 60 days of the FDIC's disallowance of their claims. *See* 12 U.S.C. § 1821(d)(6)(A).

14  Second, it is undisputed that Plaintiffs did not file their claim with the FDIC before the claims

15  bar date, but instead waited nearly three years to do so after the claims bar date passed and after

16  they learned that City Bank had failed and gone into receivership. Because the FDIC denied their

17  claims as untimely, the statute's limited grant of jurisdiction does not apply. Finally, the single

18  statutory exception does not provide a basis for jurisdiction given that the FDIC has discretion to

19  consider such claims and declined to do so, and Plaintiffs have failed to otherwise demonstrate

20  that their claims, although untimely, were brought "in time to permit payment."

---

22          [2] Plaintiffs' lawsuit against Mr. Boyle, ADC, and Sabal is anomalous in the sense that most FIRREA

23  lawsuits are brought directly against the FDIC. The Ninth Circuit has recently held, however, that "[l]itigants cannot
    avoid FIRREA's administrative requirements through strategic pleading" and naming a purchasing bank as

24  defendant rather than the FDIC. Instead, "a claim asserted against a purchasing bank based on the conduct of a failed
    bank must be exhausted under FIRREA." *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1209 (9th Cir.

25  2012); *see also Brabant v. JPMorgan Chase Bank, N.A.*, Case No. C11-0848, 2012 WL 2572281, at *2 (D. Ariz.
    July 2, 2012) (FIRREA barred claims against purchasing bank and bank employee acting in official capacity

26  because claims "related to" acts or omissions of the failing bank). Here, Plaintiffs' entire complaint is premised upon
    the alleged malfeasance of City Bank and its employees.

### a.    The Court Lacks Jurisdiction Because Plaintiff's Complaint Was Not Timely Filed Under 12 U.S.C. § 1821(d)(6).

The Ninth Circuit has repeatedly recognized the jurisdictional nature of FIRREA's mandatory exhaustion and filing requirements. *See Intercontinental Travel Marketing, Inc.*, 45 F.3d at 1282–84; *Henderson v. Bank of New England*, 986 F.2d 319, 320–21 (9th Cir.), *cert. denied*, 510 U.S. 995 (1993). As explained above, FIRREA's limited grant of jurisdiction to federal courts contains a clear 60-day deadline for filing a federal suit on timely claims that were disallowed by the FDIC. 12 U.S.C. § 1821(b)(6). Recognizing as much, the Seventh and First Circuits, among others, have expressly held in recent years that the 60-day federal court filing deadline in 12 U.S.C. § 1821(d)(6) is a jurisdictional requirement, not a mere "claims processing rule" that is subject to waiver, estoppel, or equitable tolling. *See Miller v.  FDIC*, 738 F.3d 836 (7th Cir. 2013) (holding that the 60 day filing deadline established in section 1821(d)(6) is jurisdictional and not subject to waiver, estoppel, or tolling); *Acosta-Ramirez v. Banco Popular de Puerto Rico*, 712 F.3d 14, 20 (1st Cir. 2013) (holding that "the failure of the plaintiffs to comply with the sixty-day requirement to seek judicial review of the denial of their administrative claims [] deprives the court of jurisdiction" and explaining that the statute's plain language "makes it clear that Congress wanted the rule to be "jurisdictional."); *Brady Development Co. Inc. v. RTC,* 14 F.3d 998, 1003 (4th Cir. 1994) (explaining that "[t]he precise jurisdictional limitations on the Article III courts mandated by FIRREA are determined by reading section 1821(d)(13)(D) in conjunction with the statute's allowance of an action within sixty days of a claim being denied as provided for in section 1821(d)(6)(A)").[3]

Here, even assuming FIRREA permitted jurisdiction over claims automatically

---

[3] *Accord RTC v. W.W. Dev. & Mgmt., Inc.*, 73 F.3d 1298, 1303 (3rd Cir. 1996) (district court lacked jurisdiction over claim "[s]ince more than 240 days [180 day decisional period plus 60 day filing period] elapsed between the filing of the claim with RTC and the filing of the federal case in the district court"); *Home Capital Collateral, Inc. v.  FDIC*, 96 F.3d 760, 764 (5th Cir. 1996) (affirming dismissal for lack of jurisdiction because plaintiff did not file district court suit within sixty-day period prescribed by section 1821(d)(6)(A)); *Astrup v. RTC*, 23 F.3d 1419, 1421 (8th Cir. 1994) (same); *Muhammad v.  FDIC*, 448 Fed. App'x 74, 2012 WL 116812, at *1 (D.C. Cir. Jan. 6, 2012) (unpublished) (same).

disallowed as untimely, Plaintiffs had only sixty (60) days to file suit in the appropriate federal court. It is undisputed that they did not do so. Plaintiffs filed their claim with the FDIC on April 30, 2013. (Dkt. No. 1 at ¶ 3.42.)  The FDIC denied those claims as untimely on June 3, 2013. (*Id.*) Plaintiffs then filed a state-court action against Defendants, voluntarily dismissed that lawsuit, and more than sixty days after June 3, 2013, filed the instant lawsuit on October 15, 2013. (Dkt. No. 1.) Plaintiffs thus failed to comply with FIRREA's mandatory filing deadline, and this Court lacks jurisdiction to consider their claims.

Plaintiffs did so upon the apparent belief that the 60-day deadline was a "statute of limitations" that Defendants could agree to waive or that the Court could (or would) toll for equitable reasons. But Plaintiffs' belief is mistaken. FIRREA's 60-day filing deadline is jurisdictional. Doctrines of waiver, estoppel, and equitable tolling do not apply to subject matter jurisdiction requirements, and a lack of subject matter jurisdiction can be raised at any time, even by the Court. *See Intercontinental Travel Marketing, Inc.*, 45 F.3d at 1286 (collecting cases); *accord Miller*, 738 F.3d at 843–44 (explaining that "[w]hether a limitations period has the status of a jurisdictional prerequisite or a claim-processing rule determines whether it is subject to waiver, estoppel, or equitable tolling doctrines[,]" and holding that because the 60-day filing deadline under FIRREA was jurisdictional, the district court properly rejected the plaintiff's argument that his failure to timely file in the district court should be equitably tolled). No party here disputes the fact that this matter was not timely filed in federal court. Because the Court has an independent obligation to determine whether jurisdiction exists, and Plaintiffs undisputedly failed to comply with FIRREA's jurisdictional filing deadline, the Court has no basis to exercise its jurisdiction over Plaintiffs' affirmative claims.

> **b.     This Court Lacks Jurisdiction Because Plaintiffs' Claim to the FDIC  Was Untimely and They Do Not Satisfy the Exception in Section 1821(d)(5).**

The Court also lacks subject matter jurisdiction to adjudicate this dispute for the additional reasons that (1) Plaintiffs filed their claims years after the claims bar date and (2)  they

1  have not carried their burden to demonstrate that the exception in 12 U.S.C. § 1821(d)(5) should

2  have authorized the FDIC to consider their claims. As explained above, FIRREA requires a

3  claimant to file subject claims with the FDIC after notice is published. 12 U.S.C. §

4  1821(d)(3)(B). Claims must be filed by the claims bar date set by the FDIC, which must be at

5  least 90 days after notice is published under the statute. "If a claimant submits a timely claim to

6  the FDIC, it must determine within 180 days whether to allow or disallow the claim."

7  *Intercontinental Travel Marketing, Inc.*, 45 F.3d at 1282 (citing 12 U.S.C. § 1821(d)(5)(A)(i)). If

8  the claim is not timely filed with the FDIC, FIRREA strips the FDIC of authority to consider the

9  claim, instead providing that untimely claims "shall be disallowed and such disallowance shall

10 be final." 12 U.S.C. § 1821(d)(5)(C)(i). As noted above, the only exception to this bar provides

11 that a claim filed after the claims bar date "*may* be considered *by the receiver* if . . . the claimant

12 did not receive notice of the appointment of the receiver in time to file such claim before such

13 date; and . . . such claim is filed in time to permit payment of such claim." 12 U.S.C. §

14 1821(d)(5)(C)(ii) (emphasis added). This section does not itself vest the Court with jurisdiction

15 to consider a late-filed claim; it merely confers discretion upon the FDIC as receiver to do so.

16 *See Freeman v. FDIC*, 56 F.3d 1394, 1402 (D.C. Cir. 1995) (The "only consequence [of

17 improper notice under FIRREA] is that the FDIC 'may' consider a late-filed claim.").

18      The Ninth Circuit "read[s] the claims bar date to be a jurisdictional requirement."[4]

19 *Intercontinental Travel Marketing, Inc.*, 45 F.3d at 1284.[5] Here, it is undisputed that Plaintiffs

20

_____

21      [4] In light of the Ninth Circuit's authority on the jurisdictional nature of the claims bar date, the Court rejects
22 Plaintiffs' argument that it is non-jurisdictional or otherwise irrelevant to determining jurisdiction. However, even if
   viewed as a "statute of limitations"-type deadline that is subject to estoppel, waiver, or tolling, the Court would
23 dismiss Plaintiffs' claims because Plaintiffs nowhere allege or argue any basis for such exceptions to the statutory
   deadline. Accordingly, it would remain undisputed that Plaintiffs failed to timely file their claim, and that failure
24 renders their attempted exhaustion insufficient under FIRREA's clear terms.

25      [5] *See, e.g., Westwind Meranto, LLC v. FDIC*, --- Fed. App'x ---, 2014 WL 1409782, at *1 (9th Cir. April
   14, 2014) (unpublished) (affirming dismissal for lack of subject matter jurisdiction where plaintiff submitted claim
26 to FDIC more than two years after claims bar date); *Walker v. Washington Mut. Bank, F.A.*, --- Fed. App'x. ----,
   2014 WL 791806, *1 (9th Cir. Feb 28, 2014) (unpublished) (no jurisdiction where plaintiffs failed to allege that they
   filed a "timely administrative claim" under FIRREA); *Waltner v. FDIC*, 549 Fed. App'x 678 (9th Cir. Dec. 11,

ORDER
PAGE - 11

1   filed their claims with the FDIC nearly three years after the claims bar date passed. Because no

2   court has jurisdiction over a claim until the exhaustion of FIRREA's administrative process and

3   Plaintiffs failed to properly and timely exhaust that process, their claims cannot be considered in

4   this Court unless the single statutory exception authorized the FDIC to consider the claim. *See*

5   *Potter v. JPMorgan Chase Bank, N.A.*, No. C13-0863, 2013 WL 1912718, at *7 (C.D. Cal. May

6   8, 2013) (concluding that the claims bar date is jurisdictional and explaining that section

7   1821(d)(5)(C)(i) "contemplates that if a claimant files an untimely claim that does not meet the

8   statutory exceptions, it shall be immediately denied by the FDIC, and no further litigation is

9   authorized."); *Feigel v. FDIC*, 935 F. Supp. 1090, 1095 (S.D. Cal. 1996) (dismissing for lack of

10  jurisdiction where plaintiffs did not file timely claims with FDIC and explaining that "the district

11  courts do not have jurisdiction to hear claims that were not timely filed") (citing *Intercontinental*

12  *Travel Marketing*, 45 F.3d at 1284)); *Alkasabi*, 2014 WL 1193899, at *4 (recognizing that the

13  administrative claims process is jurisdictional and requiring that plaintiffs satisfy single statutory

14  exception where they filed untimely claims with FDIC).

15          The question is thus whether Plaintiffs have carried their burden to demonstrate that the

16  statutory exception for late-filed claims applies. Under section 1821(d)(5)(C)(ii), the FDIC is not

17  required to disallow an untimely claim—and may, in its discretion, consider such a claim—if

18  "the claimant did not receive notice of the appointment of the receiver in time to file such claim

19  before such date; and . . . such claim is filed in time to permit payment of such claim." 12 U.S.C.

20  § 1821(d)(5)(C)(ii). Here, Plaintiffs state that they did not have notice of the receiver's

21  appointment or bank's failure until roughly one to two weeks after the claims bar date passed in

22  late July 2010. They then waited nearly three years to file their claims with the FDIC in April

23  2013. Plaintiffs argue that this statutory exception applies, that the FDIC should have considered

24  their claims, and that the Court accordingly has jurisdiction to consider the claims.

25  _____

26  2013) (unpublished) (district court properly determined that it lacked subject matter jurisdiction because the
plaintiffs "failed to file a *timely* administrative claim" under FIRREA) (emphasis added).

1        The Court is not persuaded that Plaintiffs have carried their burden to demonstrate that

2 jurisdiction exists. As an initial matter, Plaintiffs neither allege nor argue that their claims were

3 filed "in time to permit payment" as required under § 1821(d)(5)(C)(ii). With no suggestion

4 whatsoever that this requirement is established, Plaintiffs have not demonstrated that their claim

5 could (or should) have been considered by the FDIC.[6] Further, while Plaintiffs allege that they

6 were not personally aware that the FDIC was named as receiver for City Bank until one to two

7 weeks after the claims bar date, it is undisputed that extensive news coverage of City Bank's

8 failure and the FDIC's receivership existed in major, state-wide news publications and in

9 newspapers published in the same locale as the subject property. In similar situations, courts

10 have recognized that notice by publication and inquiry notice is sufficient to foreclose FIRREA's

11 untimeliness-exception for claimants who were not known to the FDIC because constructive

12 notice by publication is all that is required for constitutionally sufficient notice. *See Tillman v.*

13 *Resolution Trust Corp.*, 37 F.3d 1032, 1036 (4th Cir. 1994) (holding that plaintiff had

14 constructive notice due to publishing of local newspaper stories and press releases about bank's

15 receivership); *Alkasabi*, 2014 WL 1193899, at *4 (publication in newspapers of receivership and

16 inquiry notice due to scope of  bank failure sufficient to provide constructive notice and

17 foreclose section 1821(d)(5)(C)(ii) exception); *In re Community Bank of Northern Va. Mortgage*

18 ─────────────────────

19      [6] Additionally, the Court is not persuaded that it has jurisdiction to consider a claim expressly denied as
20 untimely regardless of this statutory exception. As noted above, the exception does not expressly vest the Court with jurisdiction; it merely confers discretion upon the FDIC to consider an untimely claim. When the FDIC determines
21 that an untimely claim does not fit the exception, it has no discretion to consider the claim and must automatically deny relief. FIRREA then precludes district courts from exercising review of such a claim. To the extent this reading
22 raises due process concerns—an argument not advanced by Plaintiffs here—the Court is more than satisfied that Plaintiffs were provided an opportunity under this exception to bring their claims to the FDIC in a reasonably timely
23 manner following notice of the receivership, and cannot say that the FDIC's denial of Plaintiffs' claims as untimely nearly three years after they received notice of the receivership was inappropriate. *See Zawrotny v. FDIC*, 895 F.
24 Supp. 16, 21 (D. Mass. 1995) ("Whatever equitable or constitutional limitation there may be to this discretion, it was not exceeded here. [T]he FDIC declined to accept a claim filed fifteen months after the plaintiffs clearly became
25 aware of the FDIC's appointment as receiver."); *see also Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 317 (1950) (holding that in a case in which the claimants are unknown and not reasonably ascertainable, notice
26 by publication "is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights").

1    *Lending Practices Litig.*, 954 F. Supp. 2d 360 (W.D. Pa. 2013) ("Publication in local newspapers

2    is sufficient notice of the receivership."). Here, Plaintiffs had constructive notice of City Bank's

3    failure and the FDIC's appointment as receiver, and cannot avail themselves of section

4    1821(d)(5)(C)(ii)'s exception. The FDIC had authority to deny their claim as untimely, and this

5    Court has no subject matter jurisdiction to hear their claims against Defendants Bryan Boyle,

6    ADC, or Sabal.

7        **B.    ADC's Counterclaim**

8        The Court next addresses ADC's counterclaim against Plaintiffs KRE, Mr. Kuhlmann,

9    and Ms. Caspar.[7] ADC moves for judgment under Federal Rule of Civil Procedure 12(c) as to

10   ADC's counterclaim for judicial foreclosure of the subject Property. Under Rule 12(c), "[a]fter

11   the pleadings are closed—but early enough not to delay trial—a party may move for judgment

12   on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings "is properly granted when,

13   taking all the allegations in the pleadings as true, a party is entitled to judgment as a matter of

14   law." *Lyon v. Chase Bank USA, N.A.,* 656 F.3d 877, 883 (9th Cir. 2011). The court evaluates a

15   Rule 12(c) motion for judgment on the pleadings under the same standard as a Rule 12(b)(6)

16   motion to dismiss. *Dworkin v. Hustler Magazine Inc. .,* 867 F.2d 1188, 1192 (9th Cir. 1989).

17   When ruling on a motion to dismiss, a court may consider the pleadings, documents attached to

18   the pleadings, documents incorporated by reference in the pleadings, and matters of judicial

19   notice. *United States v. Ritchie,* 342 F.3d 903, 907–08 (9th Cir. 2003). Here, Plaintiffs' pleadings

---

21   [7] While the Court has dismissed Plaintiffs' affirmative claims against all Defendants under FIRREA for
22   lack of jurisdiction, "[g]enerally speaking, the dismissal of the complaint will not preclude adjudication of a
     counterclaim over which the court has an independent basis of jurisdiction." *Barefoot Architect, Inc. v. Bunge*, 632
     F.3d 822, 836 (3rd Cir. 2011); *see Cripps v. Life Ins. Co. of N. America*, 980 F.2d 1261, 1267 (9th Cir. 1992). Here,
23   the parties appear to agree that had the counterclaim been filed as a free-standing suit between ADC as Plaintiff and
     KRE, Mr. Kuhlmann, and Ms. Caspar as Defendants, complete diversity would exist and the Court would have
24   diversity jurisdiction over the matter. Because the Court is focused on whether jurisdiction exists with respect to the
     individual counterclaim rather than with respect to the case as a whole, the Court concludes that it may exercise its
25   subject matter jurisdiction over Defendants' counterclaim. *Barefoot*, 632 F.3d at 836. Such an approach in the
     FIRREA context, while anomalous, is consistent with the Ninth Circuit's guidance that a party may be barred from
     raising an unexhausted claim under FIRREA's terms, but is not precluded from raising unexhausted affirmative
26   defenses. *See RTC v. Midwest Fed. Sav. Bank of Minot*, 36 F.3d 785, 791–93 (9th Cir. 1993).

rely extensively on the Construction Loan Agreement between the Stevens and City Bank, and upon the Deed of Trust that they executed with City Bank. Accordingly, the Court appropriately considers those documents in its analysis.

Plaintiffs do not dispute that they signed the Deed of Trust that secures the Property and that the requisite payments on the loan have not been made. However, they raise as affirmative defenses all theories raised as affirmative claims for relief, including fraud in the inducement, fraud in factum, breach of contract, breach of a special fiduciary duty, and violations of the Washington Consumer Protection Act. ADC argues that (1) Plaintiffs are barred from relying on any oral agreements or representations to support their defenses under 12 U.S.C. § 1823(e), and thus, that their defenses fail; (2) that Plaintiffs' affirmative defenses fail to the extent they rely on the Construction Loan Agreement, which provided City Bank with the *right* rather than an *obligation* to condition loan dispersements on satisfactory progress; and (3)  that Plaintiffs' remaining claims are insufficiently pled and fail as a matter of law. The Court addresses each argument in turn.

### 1.   Section 1823(e) Bars Plaintiffs from Relying on Any Unwritten Agreements, Warranties, or Nondisclosures.

The parties' first dispute the effect of 12 U.S.C. § 1823(e). Section 1823(e) codified the *D'Oench, Duhme* doctrine, which serves as a "principle of equitable estoppel that permits bank examiners to rely on the records of a bank in evaluating the bank's financial conditions, by protecting the banking authorities from suits founded on undisclosed conditions or deceptive documents." *Brookside Assocs. v. Rifkin*, 49 F.3d 490, 493 (9th Cir. 1995). To meet this objective, section 1823(e) provides that no agreement which tends to diminish or defeat the interest of the FDIC in a note shall be valid unless (1) the agreement is in writing; (2) the writing was executed by the depository institution and the person claiming an adverse interest contemporaneously with the note; (3) the written agreement was approved by the bank's board of directors or loan committee, and that approval is reflected in the bank's records; and (4) the

1  written agreement has been continuously maintained as an official record of the bank. 12 U.S.C.

2  § 1823(e); *see Ledo Fin. Corp. v. Summers*, 122 F.3d 825, 829–30 (9th Cir. 1997). While the

3  language of section 1823(e) mentions only the FDIC, federal courts have consistently explained

4  that "a private entity that purchases the assets of a failed institution from the FDIC is protected

5  against side agreements between a debtor and original lender to the same extent as the FDIC,

6  even though the literal language of section 1823(e) and *D'Oench, Duhme* does not so provide."

7  *Nat'l Enterprises, Inc. v. Smith*, 114 F.3d 561, 564 (6th Cir. 1997); *see FDIC v. Newhart*, 892

8  F.2d 47, 48–51 (8th Cir. 1989) (extending protections under section 1823(e) to banks purchasing

9  loans from FDIC); *Magdaleno v. Indymac Bancorp, Inc.*, 853 F. Supp. 2d 983, 995 (E.D. Cal.

10 2011) ("The doctrine and its statutory counterpart apply equally to successors in interest . . . that

11 purchase assets which FDIC has assumed receivership.) Finally, the protections found under

12 section 1823(e) bar both contract and tort defenses arising out of an alleged secret agreement.

13 *Castleglen, Inc. v. Resolution Trust Corp.,* 984 F.2d 1571, 1574–75 (10th Cir. 1993); *Timberland*

14 *Design, Inc. v. First Serv. Bank for Sav.*, 932 F.2d 46, 50 (1st Cir. 1991).

15      Section 1823(e) here bars Plaintiffs' reliance on any unwritten or otherwise

16 undocumented agreement, allegedly made with City Bank, its employees, or Defendant Bryan

17 Boyle, that the Bank agreed to condition loan dispersements on satisfactory construction

18 progress. Indeed, Plaintiffs concede that if section 1823(e) applies, their defenses fail to the

19 extent they are based on alleged oral promises, such as the one allegedly made by "City Bank"

20 that it would evaluate progress on development of the Property when making disbursements on

21 the Loan. (Dkt. No. 37 at 13.) Under the law as explained herein, section 1823(e) does apply to

22 ADC and Sabal, and precludes Plaintiffs from raising affirmative defenses based on City Bank's

23 alleged verbal promises or representations. This is the very type of side-agreement that the

24 statute is meant to prevent.

25      But section 1823(e) goes further. It precludes Plaintiffs' reliance on either omissions or

26 the truthfulness of the alleged statements made to them by City Bank and its employees. As the

ORDER
PAGE - 16

Supreme Court explained in *Langley v. FDIC*, 484 U.S. 86, 91–92 (1987), "agreements" precluded under section 1823(e) include promises of future performance, as well as warranties, conditions, or other statements whose truthfulness makes up the alleged "bargain of the parties." *Id.* at 90–91. Other federal courts have recognized *Langley*'s expansive reach, explaining that "section 1823(e) applies as much to misrepresentation claims based upon non-disclosures as to those based upon affirmative assertions." *FDIC v. Avirez, Ltd. v. Resolution Trust Corp.*, 876 F. Supp. 1135, 1141 (C.D. Cal. 1995); *see Brookside Assocs. v. Rifkin*, 49 F.3d 490, 497–98 (9th Cir. 1995); *McCullough v. FDIC*, 987 F.2d 870, 873 (1st Cir. 1993); *FDIC v. Bell*, 892 F.2d 64 (10th Cir.1989), *cert. dismissed*, 496 U.S. 913 (1990). Here, Plaintiffs' attempt to rely upon Mr. Boyle's alleged omissions regarding his relations with Mr. Stevens and City Bank's alleged failure to inform Plaintiffs that Mr. Stevens had already made draws on the line of credit when the loan was increased also fall squarely within section 1823(e)'s purview. These are the very types of statements and warranties that, if Plaintiffs wished to have been able to rely upon, they were required under FIRREA to reduce them to writing as part of their agreement with City Bank. *See, e.g.*,  *Resolution Trust Corp. v. Ehrenhaus*, 34 F.3d 441, 442 (7th Cir. 1994) (applying *Langley* and concluding that § 1823(e) applied to a bank's alleged concealment of facts material to the defendant's loan guaranty).They nowhere allege that they did so. Accordingly, Plaintiffs cannot base any affirmative defenses on such unwritten agreements or warranties. Their fraud in the inducement, common law fraud, estoppel, special duty, and Consumer Protection Act-based affirmative defenses fall within section 1823(e)'s ambit and fail as a matter of law. (*See* Dkt. No. 31 at 6.)

## 2.    Fraud in Factum

Plaintiffs next argue that even in light of section 1823(e), their fraud in factum affirmative defense defeats ADC's entitlement to foreclosure. (Dkt. No. 37 at 13–15.) This argument is based on the Supreme Court's statement in *Langley* that fraud in factum "take[s] the instrument out of § 1823(e)[,]" and thus survives that provision's bar on unwritten agreements.

*See Langley*, 484 U.S. at 93. Fraud in factum, or "fraud in the execution," involves a misrepresentation that "induces a party to believe the nature of his act is something entirely different than it actually is." *Southwest Admin., Inc. v. Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1986). It "arises when a party executes an agreement 'with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." *Id.* (citing Uniform Commercial Code § 3-305(2)(c)); *see Pedersen v. Bibioff*, 828 P.2d 1113, 1119–20 (Wash. App. 1992) ("Fraud in factum . . . has been defined as fraud that goes to the nature of the instrument itself."); Restatement (Second) of Contracts § 163 cmt. a (2013) (fraud in factum exists where "the party believes "he is assenting to a contract entirely different from the proposed contract."). Fraud in the inducement, however, arises where a misrepresentation induces a party to assent to something he otherwise would not have. *Southwest*, 791 F.2d at 774. Whereas fraud in the inducement renders an instrument voidable, fraud in factum renders the instrument void *ab initio,* and prevents a subsequent purchaser from ever obtaining good title. *Id.*

Here, Plaintiffs argue that City Bank's promise to condition loan dispersements on satisfactory construction was an "essential term," misrepresentation of which constitutes fraud in factum. Plaintiffs also argue that Mr. Boyle's opinions as to the meaning of the CLA went to the meaning of the agreement itself, thus bringing it within the ambit of the "fraud in factum" doctrine. But Plaintiffs' allegations do not constitute fraud in factum. As an initial matter, the Washington Supreme Court has made clear that to support a fraud claim, the alleged misrepresentation must concern an existing fact, such that the subject of the representation exists independently of future acts or performance. *Shook v. Scott*, 353 P.2d 431 (Wash. 1960); *W. Coast, Inc. v. Snohomish Cty.*, 48 P.3d 997 (Wash. 2002) ("A promise of future performance is not a representation of an existing fact and will not support a fraud claim."). To the extent Plaintiffs base their fraud in factum defense on City Bank's or Mr. Boyle's promise to condition loan disbursements on satisfactory construction progress in the future, such statements are not misrepresentations that can support a fraud claim. They are more appropriately the subject of a

1    breach of contract action. *Cf. Rockefeller v. Landau*, 137 Wash. App. 1021, at *2 (Wash. App.

2    2007) (statements about future ability to pay could not support fraud claim). Second, to the

3    extent Plaintiffs allege that Mr. Boyle made statements about the meaning of the CLA's terms,

4    such statements are merely opinions about the meaning of that document, not misrepresentations

5    of then-existing facts. *Shook*, 353 P.2d at 434.

6         Further, even if the alleged misrepresentations could support a fraud claim, they would

7    not constitute fraud in factum. Fraud in factum requires that the misrepresentation go to the

8    nature of the instrument itself and that Plaintiffs establish "excusable ignorance of the contents of

9    the writing signed." *Southwest*, 791 F.2d at 774. Here, Plaintiffs do not argue that when they

10   signed the Deed of Trust, they were not aware that they were agreeing to pledge the Property as

11   security, which would depend on the Stevens' repayment of the loan. The misrepresentations

12   they allege may have induced them to enter the agreement, but they knew what the agreement

13   involved and nowhere allege that they did not have the opportunity to review the documents they

14   signed and the CLA which they now assert was part and parcel of one agreement between

15   Plaintiffs, City Bank, and the Stevens. In light of the alleged facts, the Court cannot conclude

16   that Plaintiffs have adequately alleged fraud in factum.

17              **3.     The Construction Loan Agreement**

18        Finally, Plaintiffs argue that the CLA that Mr. and Mrs. Stevens executed with City Bank

19   provides a basis for their affirmative defenses that City Bank breached the contract, which in turn

20   deprives ADC of a basis to foreclose upon the Property. Defendant argues in response that the

21   CLA is a non-starter for three reasons. First, Defendants point out that Mr. Kuhlmann, Ms.

22   Caspar, and KRE are not signatories to the CLA, and accordingly may not rely upon that

23   document under 12 U.S.C. 1823(e). Second, Defendants argue that even if the Court considers

24   the CLA, Plaintiffs argument is without merit because the CLA provided City Bank with the

25   *right*, not the  *obligation*, to condition loan dispersements upon satisfactory work progress.

26   Finally, Defendants argue that Plaintiffs cannot claim any benefit under the CLA as third-party

1    beneficiaries. Upon review of the CLA, the Court agrees that (i) Plaintiffs, because they were not

2    signatories to the CLA, cannot rely on that agreement under section 1823(e); and (ii) that even if

3    they could, the CLA did not impose a duty upon City Bank to condition its loan dispersements to

4    Mr. and Mrs. Stevens, but instead granted the Bank the right to do so.

5           The first basis is easily addressed. A review of the CLA demonstrates that Plaintiffs were

6    not signatories to that document, *i.e.*, Mr. Kuhlmann and Ms. Caspar never took out the loan,

7    agreed to make payments on it under the CLA, or actually agreed to be bound by its provisions.

8    They did sign the Deed of Trust, by which they pledged the Property as security on the loan that

9    the Stevens obtained, but as ADC notes, that agreement only requires the parties to perform their

10   "respective obligations." (Dkt. No. 15 at 35.) To clarify their "respective obligations," the Deed

11   of Trust even states that it is given to secure payment of the indebtedness and performance of

12   any and all obligations under the Note, the Related Documents, and the Deed of Trust, and "to

13   secure any and all of Borrower's [the Stevens'] obligation under that certain *Construction Loan*

14   *Agreement between Borrower and Lender*[.]" (*Id.*) On the plain terms of the CLA and the Deed

15   of Trust, Plaintiffs here were not parties to the CLA. For the reasons explained above, section

16   1823(e) precludes them from relying on the CLA to assert an adverse interest to that of ADC.

17          Even if Plaintiffs could rely on the CLA, however, it would not support their affirmative

18   defenses. The CLA contained three relevant provisions. The first, entitled "Conditions Precedent

19   to Each Advance[,]"stated that ""*Lender's obligation* to make the initial Advance and each

20   subsequent Advance under this agreement shall be *subject to the fulfillment to Lender's*

21   *satisfaction* of all of the conditions set forth in this Agreement and in the related documents[.]"

22   (*Id.* at ¶ 3.10; Dkt. No. 36, Ex. A.) The agreement then calls for City Bank's approval

23   contractors, subcontractors, plans, specifications, permits, architects' and construction contracts,

24   and a borrower's authorization. (*Id.*) Plaintiffs argue that under this provision, City Bank agreed

25   to disperse loan funds to Mr. and Mrs. Stevens only when satisfactory proof of construction was

26   provided. But that is not what the agreement says. The language of the provision states in clear

ORDER
PAGE - 20

terms that City Bank's obligation to disperse funds is "subject to the fulfillment to Lender's satisfaction" of the conditions precedent—*i.e.*, the Bank's obligation to loan funds is limited by its discretion to require that the conditions be met. The language to which Plaintiffs point cannot be reasonably read to *require* City Bank to exercise the controls alleged for their own benefit. *See*, *e.g.*, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 682 (9th Cir. 2009) (affirming dismissal of employee claims based on Wal-Mart's alleged obligation to inspect suppliers where the relevant agreement gave Wal-Mart the right to conduct inspections, but did not impose an obligation to do so).

The other CLA provisions further support this conclusion. The "Limitation of Responsibility" provision, which is located on the same page as the "Conditions Precedent" provision, expressly states that the right of City Bank to inspect and approve plans, specifications, and the workmanship of the construction, as well as any other right of inspection or inquiry, is "solely for the protection of [City Bank]'s interests, and under no circumstances shall they be construed to impose any responsibility or liability of any nature whatsoever on Lender to any party." (Dkt. No. 36, Ex. A at 3.) The provision even goes further, stating that "Neither Borrower nor . . . any other person shall rely, or have any right to rely, upon Lender's determination of the appropriateness of any Advance." (*Id.*) Here, Plaintiffs attempt to do nothing more than rely upon City Bank's determination of the appropriateness of the advances. In light of these express disclaimers, which clearly explain that City Bank was not required to condition loan advances on satisfactory construction documentation or progress, Plaintiffs' reading of the Conditions Precedent provision fails as a matter of law. And finally, Plaintiffs' reliance upon the provision that places a duty upon the Borrowers to apply only for disbursements with respect to "work actually done" is without merit. That provision places a duty upon Mr. and Mrs. Stevens, not City Bank, and even entitles City Bank to *rely* on the Stevens' application as a certification that all representations and warranties by the Stevens are true and correct. (*Id.*) Nothing in that provision provides a basis for Plaintiffs' defenses in this

1  lawsuit. Accordingly, Plaintiffs' breach of contract affirmative defense is without merit. ADC is

2  entitled to judgment on the pleadings on its foreclosure claim.

3  **III.    CONCLUSION**

4         For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 16) and motion for

5  judgment on the pleadings (Dkt. No. 35) are GRANTED IN PART. Plaintiffs' claims are

6  DISMISSED for lack of subject matter jurisdiction. Additionally, ADC's motion for judgment

7  on the pleadings with respect to its counterclaim is GRANTED. The motions are otherwise

8  DENIED as moot.

9         DATED this 18th day of June 2014.

10

11

12

13

14

15

16                              John C. Coughenour
                                UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26